USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___10/5/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
REYNALDO SOTO, *individually and on* :
*behalf of others similarly situated,* :
 :
                          Plaintiff, :        **REPORT &**
 :        **RECOMMENDATION**
             -against- :
 :        18-CV-3602 (JGK) (JLC)
LOS CORBATICAS DELI GROCERY II :
CORP., *d/b/a* LOS CORBATICAS DELI :
GROCERY, *and* WILSON SANCHEZ, :
 :
                        Defendants. :
-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable John G. Koeltl, United States District Judge:**

        Plaintiff Reynaldo Soto was employed as a deli worker at Los Corbaticas Deli

Grocery ("Los Corbaticas") in the Bronx from December 21, 2016 to January 9,

2018.  Soto alleges that Los Corbaticas and Wilson Sanchez violated the Fair Labor

Standards Act and New York Labor Law by failing to pay minimum wages and

overtime compensation, failing to provide wage statements and wage notices, and

failing to timely pay wages on a regular weekly basis.  Defendants never responded

to the complaint.  Accordingly, Soto moved for a default judgment in the amount of

$53,237.32 in damages and $3,707.50 in attorneys' fees and costs, for a total amount

of $56,944.82.  Judge Koeltl granted the motion on September 13, 2018 and referred

this case to me for an inquest into damages.

1

For the reasons that follow, I recommend that Soto receive $51,072.96 in damages (plus pre-judgment interest), and $2,843.75 in attorneys' fees and costs.

## I.   Background

### A.   Procedural History

On April 23, 2018, Soto filed a collective/class action complaint against defendants.  Complaint ("Compl."), Dkt. No. 1.  On May 3, 2018, Soto filed an affidavit of service substantiating that Los Corbaticas was served on April 26, 2018.  Dkt. No. 9.  On May 7, 2018, Soto filed affidavits of service substantiating that defendants William Sanchez and Manuel Doe were served on April 28, 2018.  Dkt. Nos. 11–12.  On June 26, 2018, Soto requested entries of default against Los Corbaticas, Wilson Sanchez, and Manuel Doe, which the Clerk entered on the same day.  Dkt. Nos. 13, 15–17.  On August 22, 2018, Soto voluntarily dismissed defendant Manuel Doe without prejudice.  Dkt. No. 21.

On August 24, 2018, Soto moved for a default judgment against Los Corbaticas and Wilson Sanchez.  Dkt. No. 22.  Soto's counsel, Michael Faillace, submitted a declaration in support of the motion ("Faillace Decl.").  Dkt. No. 24.  Soto also submitted his own declaration ("Soto Decl.").  Dkt. No. 24-6.  In addition, Soto submitted a statement of damages, which included a chart of his damages and a description of attorneys' fees and costs ("Pl. Damage Calcs.").  Dkt. No. 25.

On August 28, 2018, the Court ordered defendants to respond to the motion by September 7, 2018.  Dkt. No. 31.  Defendants were "advised that failure to respond to the motion for default may be grounds for a default judgment being

entered against them, in which event the defendants will have no trial." *Id.*

Defendants did not respond to the motion.  On September 13, 2018, Judge Koeltl

held a default hearing and subsequently granted Soto's motion.  Dkt. No. 33.  That

same day, this case was referred to me for an inquest into damages.  Dkt. No. 34.

## B.   Soto's Declaration

In his declaration, Soto alleges that defendants owned and operated a deli at

1685 University Avenue, Bronx, New York 10453, called Los Corbaticas Deli

Grocery.  Soto Decl. ¶ 4.  He alleges that he was employed by defendants from

approximately December 21, 2016 until on or about January 9, 2018, and regularly

worked more than 40 hours per week.  *Id.* ¶¶ 8, 13.  His alleged pay periods and

weekly salaries are set forth below:

1. Between December 21, 2016 and August 2017, he worked seven days a
   week for approximately 61.5 hours per week.  He worked from 3:00 p.m.
   until 11:30 p.m., Sundays through Thursdays, and 3:00 p.m. until 12:30
   a.m., Fridays and Saturdays.  *Id.* ¶ 14.

   a. Between December 21, 2016 and February 2017, defendants paid
      him a fixed salary of $500 per week.  *Id.* ¶ 17.

   b. Between February 2017 and July 2017, defendants paid him a fixed
      salary of $550 per week.  *Id.* ¶ 18.

   c. Between July 2017 and August 2017, defendants paid him a fixed
      salary of $700 per week.  *Id.* ¶ 19.

2.  Between August 2017 and January 9, 2018, he worked six days a week for approximately 53 hours per week.  He worked from 3:00 p.m. until 11:30 p.m., Mondays through Thursdays, and 3:00 p.m. until 12:30 a.m., Fridays and Saturdays.  *Id.* ¶ 15.

   a.  Between August 2017 and January 9, 2018, defendants paid him a fixed salary of $600 per week.  *Id.* ¶ 20.[1]

Soto claims that he was paid in cash, that he never received overtime pay, or a break or meal period, and that he was never required to track his time.  *Id.* ¶¶ 16, 22–24.  In addition, he contends that defendants never provided him with a document that "reflected the hours [he] worked . . . [his] hourly rate of pay, overtime, or any other record or report regarding [his] pay, hours worked, or any deductions or credits taken against [his] wages."  *Id.* ¶ 25.  Further, he alleges that defendants never provided him with written information about minimum wage and overtime requirements under New York State or federal law, or wage notices of his rate of pay.  *Id.* ¶¶ 26–27.

## II.    Discussion

### A.    Burden of Proof on Damages

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to

---

[1] The record does not explain why defendants paid Soto $700 per week for one month (July–August 2017) and then $600 per week for the remainder of his employment.

ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "[E]ven when the defendant[s] default[ ] and [are] not present to object," plaintiffs have the burden of establishing their entitlement to "damages . . . based on admissible evidence." *House v. Kent Worldwide Mach. Works. Inc.,* 359 F. App'x 206, 207 (2d Cir. 2010).  To establish damages upon default, plaintiffs must demonstrate that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 159 (2d Cir. 1992).

The Second Circuit has long approved the process of conducting an inquest by affidavit, without an in-person court hearing, "'as long as [the court has] ensured that there was a basis for the damages specified in the default judgment.'" *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)).  In this case, "a hearing is not necessary, as documents submitted in this action provide a 'sufficient basis from which to evaluate the fairness' of the damages requested." *Am. Jewish Comm. v. Berman,* No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) (quoting *Fustok,* 873 F.2d at 40), *adopted by,* 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016).

An employee seeking to recover unpaid wages "'has the burden of proving that he performed work for which he was not properly compensated.'" *Jiao v. Chen,* No. 03-CV-165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting

5

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 689 (1946)).  "[T]he employee should not speculate, but may rely on his present memory and recollection to carry the burden."  *Maldonado v. La Nueva Rampa, Inc.,* No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (internal citations and quotation marks omitted), *adopted by,* Order dated Aug. 9, 2012 (Dkt. No. 20).  Absent "rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct."  *Kernes v. Glob. Structures, LLC,* No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *6 (S.D.N.Y. Mar. 1, 2016) (internal citations and quotation marks omitted) (alterations in original).

## B.    Liability

Soto brings claims against defendants under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Under these laws, a plaintiff must establish that (1) the defendants are employers, and (2) the employer is engaged in interstate commerce.  *See* 29 U.S.C. §§ 206(b), 203(s).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Second Circuit has assumed, "without deciding, that 'the tests for 'employer' status are the same under the FLSA and the NYLL. . .'"  *Tapia v. Blch 3rd Ave LLC*, No. 17-2718-cv, 2018 WL 4685628, at *1, n.1 (2d Cir. Oct. 1, 2018) (per curiam) (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013)).  Moreover, courts have given the term employer "consistent interpretation" under both the FLSA and NYLL.  *Rosario v. Mis Hijos Deli Corp.,* No. 15-CV-6049 (LTS) (DCF), 2018 WL 4636822, at *10 (S.D.N.Y. Sept. 27, 2018);

*see also Beng Khoon Loo v. I.M.E. Rest., Inc.,* No. 17-CV-02558 (ARR) (RER), 2018 WL 4119234, at *4 (E.D.N.Y. Aug. 29, 2018) (collecting cases).

Soto alleges that defendants "did a level of business such that it had annual sales of at least $500,000," and his "work responsibilities involved handling goods that traveled in interstate commerce every day, such as food and detergents produced outside of the State of New York." Soto Decl. ¶¶ 11–12. Specifically, Soto claims that "Defendant William Sanchez had the power to hire and fire [him], control [his] terms and conditions of employment, and determine the rate and method of [his] compensation," and defendants "own and operate" Los Corbaticas. *Id.* ¶¶ 4–5. "Such allegations, coupled with [d]efendants' default, suffice to establish that [Sanchez and Los Corbaticas] qualify as [p]laintiffs' 'employer' for purposes of [the] FLSA and NYLL, and therefore to impose joint and several liability on each of them for their respective violations of the wage laws." *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011) (citing *Shim v. Millennium Grp., LLC*, No. 08-CV-4022 (FB) (VVP), 2010 WL 409949, at *2 (E.D.N.Y. Jan. 27, 2010)) (on default judgment, finding both individual defendants and corporation liable under FLSA where complaint contained allegations of actions taken collectively by defendants).

**C.   Damages**

As a threshold matter, there is no applicable statute of limitations defense here. The statute of limitations is six years under NYLL, two years under the FLSA for standard violations, and three years under the FLSA for willful violations.

*See* NYLL § 663(3); 29 U.S.C. § 255(a).  Soto alleges that he worked at Los Corbaticas from December 21, 2016 to January 9, 2018, Soto Decl. ¶ 8, and the Court accepts these allegations as true, given defendants' default.  *See Herrara v. 12 Water St. Gourmet Cafe, Ltd.,* No. 13-CV-4370 (JMF) (RLE), 2016 WL 1274944, at *4 (S.D.N.Y. Feb. 29, 2016) (collecting cases), *adopted by,* 2016 WL 1268266 (S.D.N.Y. Mar. 31, 2016).  Soto's employment period is thus entirely covered by both statutes of limitations.

### 1.   Overtime Wages

Soto seeks damages for defendants' failure to pay him overtime wages.[2]  Both federal and state law require employers to pay employees one and one-half times the minimum wage for time worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1); 12 NYCRR §§ 146-1.4, 142-2.2; *Kernes*, 2016 WL 880199, at *3 ("[A]n employee is entitled to be paid for overtime hours (i.e., hours exceeding 40 per week), at a 'rate not less than one and one-half times the regular rate at which [the employee] is employed.'") (quoting 29 U.S.C. § 207(a)(1)); *Herrara*, 2016 WL 1274944, at *5 (citing 29 U.S.C. § 207(a) and 12 NYCRR § 146-1.4).  Appropriate overtime wages are "calculated by multiplying [an employee's] regular hourly rate

---

[2] Soto alleges in his complaint (and in his proposed default judgment) that defendants failed to pay him minimum wages.  *See* Compl. ¶¶ 71, 80; Proposed Default Judgment at 2, Dkt. No. 29.  However, his declaration and statement of damages do not address this claim, and thus this Report and Recommendation only considers his overtime claim.  Soto also alleges in his complaint that defendants violated the timely payment provision of NYLL, Compl. ¶ 94, but he has also failed to pursue this cause of action in his default motion.  As such, this cause of action should be deemed abandoned.

(or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half.  That rate is then multiplied by the number of hours in excess of forty hours the employee worked each week." *Rosendo v. Everbrighten Inc.*, No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by*, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

Under NYLL, the "regular rate" of pay of an employee in the hospitality industry (which would include a deli) is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Java v. El Aguila Bar Rest. Corp.,* No. 16-CV-6691 (JLC), 2018 WL 1953186, at *10 (S.D.N.Y. Apr. 25, 2018) (quoting 12 NYCRR § 146-3.5(b)).  Thus, under NYLL, Soto's regular hourly rate would be determined by dividing his weekly salary by 40 hours.[3]

---

[3] This calculation differs from the approach under the FLSA.  Under the FLSA, the regularly hourly rate "is determined by dividing the total remuneration in any workweek by the total number of hours actually worked."  29 C.F.R. § 778.109. Recent cases in this District and in the Eastern District of New York have used this approach to calculate the regular rate for employees who are paid a weekly salary. *See, e.g., Thomas v. Good Vision Taste Inc.,* No. 17-CV-6084 (FB) (LB), 2018 WL 4268909, at *5 (E.D.N.Y. Apr. 17, 2018), *adopted as modified by*, 2018 WL 4265868 (E.D.N.Y. Sept. 5, 2018); *Java,* 2018 WL 1953186, at *10; *Pastor v. Alice Cleaners, Inc.*, No. 16-CV-7264 (JLC), 2017 WL 5625556, at *3 (S.D.N.Y. Nov. 21, 2017); *Cazarez v. Atl. Farm & Food Inc.,* No. 15-CV-2666 (CBA) (RML), 2017 WL 3701687, at *4, n.3 (E.D.N.Y. May 31, 2017), *adopted by,* 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017); *Chopen v. Olive Vine, Inc.,* No. CV 2012-2269 (NGG) (MDG), 2015 WL 1514390, at *6 (E.D.N.Y. Mar. 13, 2015), *adopted by,* 2015 WL 1542082 (E.D.N.Y. Mar. 31, 2015).

Although "plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief." *Ni v. Bat-Yam Food Servs. Inc.,* No. 13-CV-7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016); *see also, e.g., Castillo v. RV Transp., Inc.,* No. 15-CV-0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016); *Maldonado,* 2012 WL 1669341, at *5. Here, the Court recommends the award of damages under NYLL. Because Soto's regular hourly rate is higher under NYLL, it provides the greatest relief for overtime violations, liquidated damages, prejudgment interest, and statutory damages.

The Court makes the following calculations using NYLL based on Soto's inquest submissions: (1) Soto's regular rate by dividing his weekly salary by 40 hours; (2) his overtime rate by multiplying his regular rate by one and one-half; (3) his unpaid overtime wages per week by multiplying the overtime hours he worked per week by the overtime rate; and (4) his total unpaid overtime wages by multiplying unpaid overtime per week by the total number of weeks in the pay period, and then adding the total amount for each pay period.[4] Accordingly, Soto is entitled to unpaid overtime wages as follows:

---

[4] Soto's counsel has made the Court's job more difficult in determining the proper calculations because it appears they have "cut and paste" their analysis of the calculations from other cases. For example, in explaining Soto's damage calculations, Mr. Faillace states in his declaration: "The next line in the chart automatically calculates the 'regular rate of pay' for each period by dividing the amount actually paid each week to Plaintiff (the 'Credited' Weekly Pay) for each period, then dividing that amount by the 'Hours Per Week in Period')." Faillace Decl. ¶ 34. This calculation does not match the calculation that counsel actually made in the statement of damages chart he submits nor does it match the standard

| Pay Period | Weeks in Pay Period | Hours per Week | Weekly Salary | Regular Rate | Overtime Rate | Overtime Hours | Unpaid Overtime per Week | Total for Pay Period |
|---|---|---|---|---|---|---|---|---|
| 12/21 – 12/31/2016 | 1 | 61.5 | $500 | $12.50 | $18.75 | 21.5 | $403.13 | $403.13 |
| 1/1 – 2/14/2017 | 6 | 61.5 | $500 | $12.50 | $18.75 | 21.5 | $403.13 | $2,418.78 |
| 2/15 – 7/14/2017 | 21 | 61.5 | $550 | $13.75 | $20.63 | 21.5 | $443.55 | $9,314.55 |
| 7/15 – 8/14/2017 | 4 | 61.5 | $700 | $17.50 | $26.25 | 21.5 | $564.38 | $2,257.52 |
| 8/15 – 12/31/2017 | 20 | 53 | $600 | $15 | $22.50 | 13 | $292.50 | $5,850 |
| 1/1 – 1/8/2018 | 1 | 53 | $600 | $15 | $22.50 | 13 | $292.50 | $292.50 |
| | | | | | | | **Total** | **$20,536.48** |

## 2. Liquidated Damages

Soto seeks liquidated damages pursuant to NYLL.  Faillace Decl. ¶ 54.[5]

NYLL entitles an employee to liquidated damages "equal to [100%] of the total of

such underpayments found to be due," "unless the employer proves a good faith

basis for believing that its underpayment of wages was in compliance with the law."

---

that he cites in a later section.  *Id.* ¶¶ 44–45.  In addition, counsel includes minimum wage and spread of hours calculations, which is unduly confusing as Soto is not seeking those damages (and he did not even plead a "spread of hours" claim). *Id.* ¶¶ 35–37.  The prejudgment interest section is also incorrect based on Soto's stated position: "As the FLSA does not include interest . . . no interest is charged for the unpaid wages portion of Soto's claim.  Pre-judgment interest is calculated only upon the Spread of Hours damages."  *Id.* ¶ 38.  The Court assumes Soto seeks prejudgment interest on the unpaid overtime wages under NYLL, even though he does not say so explicitly.  Finally, counsel cites to liquidated damages under NYLL as being "computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011" (*Id.* ¶ 55), which is entirely irrelevant given that Soto did not commence work until 2016.  In the future, counsel should conform their template to the specific claims of their client rather than recycle inapplicable analyses from prior cases.

[5] In the prayer for relief of his complaint, Soto sought liquidated damages pursuant to both the FLSA and NYLL.  Compl. at 16–17.  The Second Circuit has recently held that cumulative liquidated damages awards, one under the FLSA and another under NYLL, are impermissible.  *See Rana v. Islam*, 887 F.3d 118, 122 (2d Cir. 2018) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").  However, upon default, Soto sought liquidated damages only under NYLL.

NYLL §§ 198(l-a), 663(1). "Courts deem defendants' actions willful where they have defaulted and . . . such defaulting defendants will have obviously made no showing of good faith." *Schalaudek v. Chateau 20th St. LLC*, No. 16-CV-11 (WHP) (JLC), 2017 WL 729544, at *10 (S.D.N.Y. Feb. 24, 2017) (quoting *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.,* No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016), *adopted by,* 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016)), *adopted as modified by,* 2017 WL 1968677 (S.D.N.Y. May 11, 2017).

Because defendants have defaulted, I recommend that Soto receive **$20,536.48** in liquidated damages under NYLL.

### 3.    Wage Statement and Notice Violations

Under New York's Wage Theft Prevention Act ("WTPA"), employers must provide to employees, "with every payment of wages," a statement that lists the following:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages . . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

NYLL § 195(3).

The WTPA also requires that employers provide each employee with a wage notice at the time of hiring that contains the following information:

> the rate or rates of pay and basis thereof, whether paid by
> the hour, shift, day, week, salary, piece, commission, or
> other; allowances, if any, claimed as part of the minimum
> wage, including tip, meal, or lodging allowances; the
> regular pay day designated by the employer in accordance
> with section one hundred ninety-one of this article; the
> name of the employer; any "doing business as" names
> used by the employer; the physical address of the
> employer's main office or principal place of business, and
> a mailing address if different; the telephone number of
> the employer; plus such other information as the
> commissioner deems material and necessary.

NYLL § 195(1)(a).

Employees who are not provided a wage notice within ten business days of their first day of work can recover damages of "$50 for each workday that a violation occurs or continues to occur, not to exceed $5,000," and employees can recover "$250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." *Pastor*, 2017 WL 5625556, at *5 (citing NYLL § 198(1-b), (1-d)).

Soto alleges that he never received a wage notice or a wage statement. Compl. ¶¶ 26–27. As he worked more than 100 days for defendants, he is entitled to the maximum **$5,000** for wage statement violations and **$5,000** for wage notice violations.

### 4.    Prejudgment Interest

"[C]ourts typically award prejudgment interest on damages for NYLL violations." *Pineda v. Frisolino, Inc.*, No. 15-CV-3774 (GBD), 2017 WL 3835882, at *13 (S.D.N.Y. Aug. 29, 2017) (quoting *McLean v. Garage Mgmt. Corp.*, No. 09-CV-9325 (DLC), 2012 WL 1358739, at *10 (S.D.N.Y. Apr. 19, 2012)).  Prejudgment

interest is appropriate even when a plaintiff is also awarded liquidated damages under NYLL.  *See, e.g., id.* (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); *Xochimitl*, 2016 WL 4704917, at *18.  Prejudgment interest applies only to the actual, compensatory damages, and not to liquidated damages or to damages recovered due to violations of wage statement or wage notice provisions. *See, e.g., Salustio v. 106 Columbia Deli Corp.*, No. 15-CV-6857 (GWG), 2017 WL 3736695, at *14 (S.D.N.Y. Aug. 30, 2017) (prejudgment interest "not available for violations of the wage statement or wage notice provisions" and "applies only to the amount of underpayment of wages, not the liquidated damages"); *Xochimitl*, 2016 WL 4704917, at *18 (interest applies only to compensatory damages).

New York law provides that interest shall be at the rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  Soto's prejudgment interest calculation employs the following method: "Interest, where applicable, is calculated from the midpoint of each period to today's date, at the simple rate of 9% per annum."  Faillace Decl. ¶ 38.  However, courts in this District have generally calculated prejudgment interest from "a singular, midpoint date and by multiplying the principal by the interest rate by the time period — from a singular, midpoint date — up until and including the date judgment is entered."  *Xochimitl*, 2016 WL 4704917, at *18 (quoting *Maldonado*, 2012 WL 1669341, at *11) (internal quotations omitted); *see also Pastor,* 2017 WL 5625556, at *6; *Pineda*, 2017 WL 3835882, at *13.  Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest."  *Olin Corp. v. OneBeacon Am. Ins. Co.,* 864 F.3d 130, 152 (2d

Cir. 2017) (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir.1994)).  Thus, I recommend using a "singular, midpoint date" to calculate prejudgment interest. *See, e.g., Chopen*, 2015 WL 1514390, at *13 (rejecting plaintiff's methodology of calculating prejudgment interest from several midpoints and using instead singular midpoint).

For Soto, the reasonable intermediate date is January 1, 2017—an approximate midpoint between the first time (December 22, 2016) and the last time (January 9, 2018) that he was denied overtime wages.  Thus, I recommend that Soto receive nine percent interest on a balance of **$20,536.48** from January 1, 2017 until the date that judgment is entered.

### 5.    Post-Judgment Interest

"Unlike prejudgment interest, plaintiffs are entitled to post-judgment interest on all money awards as a matter of right."  *Tacuri v. Nithin Constr. Co.,* No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (citations omitted).  According to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Post-judgment interest is calculated using the federal rate set forth in 28 U.S.C. § 1961.  *See Tacuri*, 2015 WL 790060, at *12.

Soto is thus entitled to post-judgment interest on all sums awarded, including attorneys' fees and costs, commencing when the Clerk of the Court enters judgment until the date of payment.

### 6.    Attorneys' Fees

Soto seeks attorneys' fees in the amount of $3,112.50.  Faillace Decl. ¶¶ 66–67, and Ex. H.  Both the FLSA and NYLL allow prevailing plaintiffs to receive reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); NYLL § 198(l-a).  Courts determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).

A plaintiff must "document the application [for fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done."  *N. Y. State Assn'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott v. City of N.Y.,* 626 F.3d 130, 132 (2d Cir. 2010).  Ultimately, a court's discretion to set a fee award is broad.  *See Hensley*, 461 U.S. at 437; *Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 64 (2d Cir. 2014).

### a.    Reasonable Hourly Rate

The reasonable hourly rate is the amount "a reasonable, paying client would be willing to pay," which varies by practice area and location.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n,* 522 F.3d at 190.  The reasonable rate is generally determined using "the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

16

reputation." *Restivo v. Hessemann,* 846 F.3d 547, 590 (2d Cir. 2017) (quoting

*Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)) (internal quotations

omitted).  To make this determination, a court may "rely on its own knowledge of

local, comparable rates." *Schalaudek,* 2017 WL 729544, at *12 (citing *Yuquilema v.

Manhattan's Hero Corp.,* No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *3–4

(S.D.N.Y. Aug. 26, 2014)).

   "Courts of this Circuit commonly allow for hourly rates of $300 to $400 for

experienced attorneys or partners in FLSA and NYLL wage-and-hour cases."

*Surdu v. Madison Global, LLC*, No. 15-CV-6567 (HBP), 2018 WL 1474379, at *10

(S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more

decades of experience).  "Associates with at least four years of experience . . . are

typically awarded fees of about $200 to $275 per hour." *Siegel v. Bloomberg

L.P.,* No. 13-CV-1351 (DF), 2016 WL 1211849, at *6 (S.D.N.Y. Mar. 22, 2016) (citing

*Rios v. Louya Corp.*, No. 14-CV-6800 (GHW), 2015 WL 5918194, at *4 (S.D.N.Y. Oct.

8, 2015) ($225 per hour to attorney with six years' experience); *Kim v. Kum Gang,

Inc.*, No. 12-CV-6344 (MHD), 2015 WL 3536593, at *2 (S.D.N.Y. June 5, 2015) ($275

hourly rate is reasonable for attorney with four to six years of experience); *Agudelo

v. E & D LLC*, No. 12-CV-960 (HB), 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013)

($200 per hour to associate with three years' experience in action for unpaid wages).

   In "determining the reasonableness of the requested attorneys' fees, the

Court considers the quality of the work done by the attorneys." *Harris v.

Fairweather,* No. 11-CV-2152 (PKC) (AJP), 2012 WL 3956801, at *8 (S.D.N.Y. Sept.

17

10, 2012) (reducing fee award where "documents that counsel submitted in connection with the inquest were mediocre, included numerous errors, and failed to cite to authority for much of the relief requested"), *adopted by,* 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); *see also Poparic v. European Music & Video Store,* No. 08-CV-2081 (KAM) (JO), 2009 WL 6318212, at *9 (E.D.N.Y. Dec. 16, 2009) ("[W]hile attorneys with similar numbers of years experience . . . may occasionally garner higher fees, the sub-par quality of the legal work in this case warrants a lower hourly rate."), *adopted by*, 2010 WL 1260598 (E.D.N.Y. Mar. 31, 2010).

In this case, Soto's attorneys seek hourly rates of $450 for partner Michael Faillace and $350 for associate Jesse Barton.  Mr. Faillace has extensive experience in wage-and-hour cases.  Faillace Decl. ¶ 67.  Based on recent decisions from this District and considering defendants' default and the relatively straightforward nature of the claims, the Court recommends an hourly rate of $400 for Mr. Faillace. *See, e.g. Gamero v. Koodo Sushi Corp.,* No. 15-CV-2697 (KPF), 2018 WL 4299988, at *4 (S.D.N.Y. Sept. 7, 2018) (rate of $400 awarded to Mr. Faillace); *Pastor,* 2017 WL 5625556, at *7 (compiling cases on Mr. Faillace's fee awards).[6]

---

[6] In *Pastor,* I found $425 to be a reasonable hourly rate for Mr. Faillace.  2017 WL 5625556 at *7.  However, as he did in *Pastor*, Mr. Faillace failed to comply with Judge Engelmayer's directive in *Hernandez v. JRPAC Inc.* that "in future cases, the [Faillace] [f]irm alert reviewing courts to *all* recent cases in which attorneys' fees have been awarded based on the work of the relevant attorneys, including cases in which an hourly billing rate below that requested in the case at hand has been used."  *Pastor*, 2017 WL 5625556, at *7, n.10 (quoting *Hernandez v. JRPAC Inc.,* No. 14-CV-4176 (PAE), 2017 WL 66325, at *3 (S.D.N.Y. Jan. 6, 2017)) (internal quotations omitted).  Given the straightforward nature of this case and the failure once again to comply with *Hernandez*, a rate of $400 for Mr. Faillace is appropriate (and notably the rate Judge Engelmayer used).

Mr. Barton graduated from law school in 2012 and recently joined Michael Faillace & Associates.  Faillace Decl. ¶ 67.  While a court found Mr. Barton's $375 request to be reasonable in a previous case, *Calle v. NDG Coffee Shop, Inc.,* No. 16-CV-7702 (RJS), 2018 WL 1779347, at *2 (S.D.N.Y. Apr. 12, 2018), such an amount is not warranted here.  In *Calle*, Mr. Barton represented six plaintiffs and the case went to trial.  In this case, defendants defaulted; the facts are not complex; and as noted previously, several errors were found in the materials Mr. Barton drafted.[7] In other decisions in this District and in the Eastern District of New York, courts have awarded Mr. Barton a rate of $225 for attorneys' fees.  *See Godinez v. Best Wingers LLC*, No. 16-CV-06434 (JGK) (SDA), 2018 WL 1320340, at *6 (S.D.N.Y. Feb. 21, 2018), *adopted by,* 2018 WL 1353215 (S.D.N.Y. Mar. 14, 2018); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *27 (E.D.N.Y. Sept. 22, 2017).  Moreover, in recent decisions with other associates from Mr. Faillace's firm with similar years of experience, courts in this District have awarded between $200 and $225 in attorneys' fees.  *See Gamero,* 2018 WL 4299988, at *4; *Pastor*, 2017 WL 5625556, at *8 (collecting cases).  The Court thus recommends an hourly rate of $225 for Mr. Barton.

**b.     Reasonable Hours Expended**

"After determining the appropriate hourly billing rate, the court calculates the hours reasonably expended."  *Pastor,* 2017 WL 5625556, at *8 (internal

---

[7] The record reflects that Mr. Barton drafted the "materials for the default motion." Dkt. No. 25-2.

quotation marks omitted).  In determining the reasonable number of hours required by a case, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992).  Courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994).

Mr. Faillace billed four hours, one for his initial consultation with Soto and three for drafting the complaint.  Dkt. No. 25-2.  The Court finds these hours to be reasonable.  *See Pastor*, 2017 WL 5625556, at *7 ("Given Faillace's experience with these matters, and the straightforward nature of this single-plaintiff case, the Court finds that it should have taken Faillace three and a half hours, at most, to perform those tasks [drafting, revising, finalizing complaint].")  Mr. Barton billed 0.75 hours for drafting materials for the Certificates of Default, and three hours for drafting materials for the Default Motion.  Dkt. No. 25-2.  The Court also finds these hours to be reasonable.

The Court thus recommends that Mr. Faillace receive $1,600 in fees and that Mr. Barton receive $843.75 in fees, for a total of **$2,443.75**.

### 7.    Costs

An employee who prevails in a wage-and-hour action is entitled to recover costs.  NYLL § 663(1).  Costs are defined as "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *Leblanc-*

*Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998). "As with attorneys' fees, [a] requesting party must substantiate the request for costs." *Guo v. Tommy's Sushi, Inc.,* No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); *see also, e.g., Euceda v. Preesha Operating Corp.,* No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs. . . . Plaintiff has failed to provide any substantiation, such as invoices or receipts, documenting the costs he now seeks to recover."), *adopted by,* 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

Soto seeks costs in the amount of $595: $400 for the filing fee and $195 for process server fees for the three original defendants. Pl. Damage Calcs. The Court takes judicial notice of the $400 filing fee. *Pastor*, 2017 WL 5625556, at *9. However, the Faillace firm has not submitted underlying documentation for the process server fees, and simply provided their own billing records. The Court does not recommend the award of costs without proper documentation. *Id.* The Court thus recommends the award of costs only for the **$400** filing fee.

## III.    Conclusion

For the foregoing reasons, I recommend that Soto be awarded damages in the amount of **$51,072.96** plus prejudgment interest in an amount to be calculated upon entry of judgment, attorneys' fees and costs in the amount of **$2,843.75**, and post-judgment interest on all sums awarded against defendants.

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Koeltl.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  October 5, 2018
　　　　New York, New York

James L. Cott
United States Magistrate Judge